NO CV-30

FILED

CLERK, U.S. DISTRICT COURT

03/31/2025

CENTRAL DISTRICT OF CALIFORNIA
BY_____GSA_____DEPUTY

DOCUMENT SUBMITTED THROUGH THE
ELECTRONIC DOCUMENT SUBMISSION SYSTEM

N/S

## UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Nathanael Lucius<br><br>　　　　Plaintiff,<br><br>　　vs.<br><br>EREWHON MARKET, a Corporation; NOBU HOSPITALITY LLC, a Corporation; TONY ANTOCI, an individual; ROBERT DE NIRO, an individual; NOBUYUKI MATSUHISA, an individual; TABITHA LUCIUS, an individual; Does 1-500; et al.<br><br>　　　　Defendant | Case No.  2:25-cv-02891-AH-(ADSx)<br><br>PLAINTIFF'S COMPLAINT FOR DAMAGES:<br><br>1. RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS § 1962 (C)<br><br>2.  GOV. CODE, § 12900 ET SEQ.- VIOLATION OF CALIFORNIA FAIR EMPLOYMENT AND HOUSING ACT<br><br>3. CAL. CIV. CODE § 1708.5 - CONSPIRACY, SEXUAL ASSAULT/SEXUAL BATTERY,<br><br>4. 18 U.S.C. § 1113 - ATTEMPT TO COMMIT MURDER OR MANSLAUGHTER<br><br>5.  18 U.S.C. § 2261A - STALKING (B)<br><br>6. CAL. PEN. CODE § 236- FALSE IMPRISONMENT<br><br>7. CAL. CIVIL CODE § 52.1- CALIFORNIA TOM BANE CIVIL RIGHTS ACT<br><br>8. CAL. CIVIL CODE § 1714 – NEGLIGENCE<br><br>9. 18 U.S. CODE § 1512- WITNESS INTIMIDATION<br><br>Date:04/01/2025 |

COMPLAINT- 1

**FACTS COMMON TO ALL CAUSES OF ACTION**

1. All defendants, co-conspirators and other individuals whose names and identities are unknown to the plaintiff, conspired to and engaged in several crimes against the plaintiff. These actions began in early 2019 and the actions and effects continue to persist into present day.

2. In the Spring of 2019, I agreed to spend the year with CO-DEFENDANT TABITHA LUCIUS and our mother after they both repeatedly asked me to. Our mother was visiting California for the first time since I moved from Florida 5 years earlier and they insisted that I be there.

3. On the first day of being at Tabitha's residence (around late April 2019), she would ask me to come with her to the EREWHON location in Santa Monica, CA, just down the street from her apartment.

4. I had never heard of EREWHON at the time and didn't know what it was.

5. EREWHON, owned by CO-DEFENDANT TONY ANTOCI, is a luxury grocery retail store known for its exorbitant prices and celebrity clientele.

6. When we got back to her place, she recommended that I work there.

COMPLAINT- 2

7. A few days later, as I was searching for jobs online, I would see a job posting by EREWHON's Santa Monica location and decided to apply, remembering Tabitha's recommendation.

8. In Late May 2019, I, the Plaintiff, was hired as a Cashier for EREWHON's Pacific Palisades location, located at 15285 Sunset Blvd, Pacific Palisades, CA 90272.

9. From May 2019 to July 2019, I, the Plaintiff, was an employee of Defendant EREWHON and was under its control and supervision.

10. I, The Plaintiff, am a black male.

11. The Plaintiff's duties and responsibilities as an employee at EREWHON primarily included customer service and cashier duties.

12. The Plaintiffs workstation as a Cashier at EREWHON was at the front checkout counter, located in the front-center region of the grocery store.

### A. PLAINTIFF WAS THE VICTIM OF RELENTLESS STALKING, HARASSMENT AND BULLYING DURING EMPLOYMENT AT EREWHON.

13. During my employment at EREWHON, I, the Plaintiff, was the target of daily coordinated attacks and harassment from EREWHON Management, employees and patrons of the establishment.

COMPLAINT- 3

14. Defendant EREWHON employees, would create disturbances every shift I worked during the months of May 2019 – July 2019 in which EREWHON employees would openly harass me with unwanted inappropriate interactions and personal questions of racial, sexual, and xenophobic nature.

## **EREWHON PRIORITIZED CREATING AND MAINTAINING A HOSTILE ENVIRONMENT FOR PLAINTIFF.**

15. EREWHON, its employees, and other patrons would use the interactions to create a hostile environment; using those moments to crowd around the counter and force me to engage with the employees or leave.

16. The patrons of EREWHON include hundreds of individuals whose names and identities are unknown to the plaintiff, as well as celebrity and public figure Co-conspirators including:

    a. **MICHAEL FLORIO**: Co-Conspirator MICHAEL FLORIO is a public figure who is known as a sports media personality, Host of NBC's "Pro Football Talk" and as an NFL insider, on "Sunday Night Football on NBC".

    b. **JOY TAYLOR**: Co-Conspirator JOY TAYLOR is a public figure who is known as a sports media personality, and roles on FOX Sports' "Speak for Yourself", "The Herd with Colin Cowherd" and "Undisputed with Skip and Shannon."

c. **MICHAEL SMITH**: Co-Conspirator MICHAEL SMITH is a public figure who is known as a sports media personality and roles on ESPN's "His and Hers", and NBC's "Brother from Another".

d. **CLAUDIA JORDAN:** Co-Conspirator CLAUDIA JORDAN is a public figure who is known as Reality TV actress and Host of multiple shows on Fox Soul.

e. **JOHN SALLEY**: Co-Conspirator JOHN SALLEY is a public figure, known for being former NBA Player.

17. Co-Conspirators MICHAEL FLORIO, JOY TAYLOR, MICHAEL SMITH, CLAUDIA JORDAN and JOHN SALLEY routinely showed up to EREWHON just to crowd around my workstation and harass me, the plaintiff, in an effort to have me quit or get fired; They rarely made purchases, if any.

18. Day after day and week after week, the Co - Conspirators mentioned above, would come into EREWHON and pick fights or stand at my counter asking me personal questions and encouraging EREWHON employees to do the same and act in inappropriate ways towards me. This was done to intentionally to create disturbances and a hostile environment to pressure me to leave.

## **PLAINTIFF IS COERCED ABOUT PERSONAL LIFE AND ETHNIC**

## **BACKGROUND BY EREWHON, CO-CONSPIRATORS**

19. Key instances of these interactions include but are not limited to:

- During one disturbance MICHAEL FLORIO stood in front of my register repeatedly asking me personal questions; Something he would do many more times throughout the remainder of my employment at EREWHON.

- Feeling uncomfortable due to the personal nature of the interaction, I declined to answer the questions, maintaining that I was there to work, did not wish to speak about my personal life, and also pointing out that a line of customers was forming and needed to be tended to. My response upset EREWHON store director Defendant PETER DOLAN who was also behind the counter at the time. PETER DOLAN then ordered me to get off my register and go talk to Defendant MICHAEL FLORIO as Peter helped the customers himself instead. Defendant MICHAEL FLORIO then asked me "Where are you from?" I answered the question, but not to his liking, as he made faces and aggressively muttered things under his breath before leaving the store shortly after.

- After FLORIO left, EREWHON store director PETER DOLAN, walked over and stood over me in an intimidating manner pressing his chest against my body, and said "Don't do that!".

COMPLAINT- 6

- The next shift, A group of EREWHON employees and managers, led by store director PETER DOLAN, aggressively cornered me behind the counter and demanded I tell them where I'm from. This led to a back and forth where I would challenge the relevance of their question and why they crowded around me in that way, their response was to continue asking me where I'm from. At a certain point I just wanted it to stop, so instead of remaining in the cornered position any longer or physically defending myself and risk falling into a trap that was clearly meant to get rid of me, I told them my nationality, which is American, but that's not the answer they wanted, and they continued to corner me and question my origin. I would then tell them that I was from Florida, the place where I was born and raised, that also wasn't the answer they wanted, once again continuing to corner me and harass me. Finally, I would give them what they wanted. It was my ethnic background. While differentiating between nationality and ethnicity I would tell them "My parents are from Haiti, so I'm Haitian. If that's what you're asking". The EREWHON employees finally backed off and patrons of the store would hear this answer and go into a hysterical laughter, some even went outside to share the news with other patrons of the Palisades Village shopping center. "He's Haitian!".  This would lead to people coming into the store just to mock me about being Haitian and tell me that I "shouldn't tell anybody that (I'm Haitian)".

- Then EREWHON employees questioned me about Haiti and started accusing me of being a follower of the Vodou religion. I would then clearly state the circumstances under which I was coerced and revealed my ethnicity and that it wasn't an invitation to discuss my personal life. For the record, I do not practice Vodou. This accusation was clearly

COMPLAINT- 7

intended to define me in a negative way and harm my reputation as it would continuously be repeated by EREWHON employees, even after I denied it.

- From that day on, EREWHON employees who worked next to me would tell customers at the counter that I, the plaintiff, was "Haitian". This would go on for the rest of my employment at EREHWON. They would do this constantly and randomly. The intent of this was to repeatedly attempt to recreate the scene that my ethnicity caused the day they cornered me, in the hopes that I would be so humiliated, that would I leave.

**CO-DEFENDANT TABITHA LUCIUS STARTS SHOWING UP TO MY JOB UNANNOUNCED; JOINS IN ON HARASSMENT.**

20. Another incident involves a Hispanic Female EREWHON employee openly asking me racist questions that I refused to respond to. I was then pressured to respond to her by EREWHON staff including management and "patrons" that crowded around the front counter. The question was so ignorant and nonsensical that I truly did not know how to respond. Once again, this was all done to create a hostile scene meant to make me quit in humiliating fashion.

21. During this incident I, the Plaintiff, noticed Defendant TABITHA LUCIUS amongst the crowd. The Erewhon Employee would go on to tell me that my mother didn't love me because I was dark-skinned. This was said openly as the crowd watched on. Defendant TABITHA LUCIUS would go on to agree with the Hispanic woman, making an egregious, disrespectful,

and humiliating moment even worse. This behavior was encouraged and coordinated by EREWHON Management and employees as well as unknown co-conspirators in the crowd.

22. Defendant TABITHA LUCIUS showed up to the plaintiff's workplace, EREWHON, on multiple occasions unannounced. She would join the crowds and participate in harassment, clearly using her identity as my family member to humiliate me.

23. I, the plaintiff, never shared my work schedule with Defendant TABITHA LUCIUS.

24. During the last couple of weeks of my employment I would be told by EREWHON Manager, GUADALUPE JIMENEZ, that she was the one contacting Defendant TABITHA LUCIUS.

25. When I, the plaintiff, asked EREWHON Manager GUADALUPE JIMENEZ why she would contact Defendant TABITHA LUCIUS. She loudly laughed at me and responded with "You shouldn't have put her as your emergency contact".

### B.  EREWHON, DOES 1-100, & CO-CONSPIRATORS, INTENSIFY CRIMES AGAINST PLAINTIFF IN RETALIATION FOR RESISTANCE.

**EREWHON  ORCHESTRATES MULTIPLE PUBLIC  SEXUAL ASSAULTS ON PLAINTIFF.**

26. One incident involved 3 employees from the food bar taking turns walking behind the front counter and grabbing me by the genitals. I, the Plaintiff, witnessed the Heavyset EREWHON Manager speaking with the three employees before they performed the actions. EREWHON store director PETER DOLAN was present and behind the counter for this incident.

Immediately after, he suggested that I physically attack the women while ensuring me that the cops "will never come here".

27. Another incident involved one EREWHON employee grabbing my genitals in a clearly orchestrated scene meant to humiliate me into never coming back to work. This was orchestrated by EREWHON manager KENNY BOLEN JR, who was in charge of scheduling.

28. Both incidents happened with the entire store (EREWHON employees, management, patrons, and co-conspirators) crowding around the front counter and anticipating the actions of the female employees, then laughing and openly mocking me as they watched me get violated.

29. Both of these incidents were clearly orchestrated and coordinated by EREWHON management.

30. These incidents happened within days of each other in what was a clear shift in strategy from sexual harassment, verbal and psychological abuse to sexual assault, physical assault, and an overall more physical approach in intimidation and bully tactics by EREWHON; Mid-July 2019.

**FALSE IMPRISONMENT**

31. I was physically assaulted and held against my will numerous times during my employment by EREWHON Management.

32. EREWHON's transition to a more physical approach to bullying coincided with the transfer of a new Heavyset Hispanic Male Manager from another branch. I, the plaintiff, am currently unaware of his name.

33. From the moment the Heavyset manager got there he clearly knew what had been going on at the Palisades and seemed to be assigned with leading the charge of physically intimidating and assaulting me.

34. Once transferred This Heavyset Manager was usually scheduled as a shift manager for my shifts and engaged in holding me against my will, false imprisonment, leaning on me, pinning me against the counter, as well as playing a heavy role in coordinated efforts to humiliate me into quitting.

35. During a shift in mid-July 2019 Peter Dolan and This Heavyset Manager physically prevented me from leaving EREWHON. This was witnessed by Co-Conspirator Claudia Jordan, following a stunt where they tried to get me to leave with her.

COMPLAINT- 11

**RACIAL DISCRIMINATION**

36. During a shift in Late July 2019, CEO and Owner of EREWHON TONY ANTOCI walked into EREWHON and stopped in front of the counter to stare at (the plaintiff) for a few seconds before yelling "It's your hair!" and walking away.

37. Defendant TONY ANTOCI was referring to the Plaintiff's "locs" (also known as "dreadlocks") hairstyle; Using a hairstyle that I had when I was interviewed and hired, as justification for the ongoing harassment, discrimination, and civil rights violations.

38. Vice President of EREWHON, JASON WIDENER, who was standing behind the plaintiff at the time of the incident, immediately apologized and told (the plaintiff) "He can't say that, I'm going to tell him he can't say that".

39. The harassment was done intentionally, repeatedly, openly and unapologetically with a clear agenda of forcing me, the plaintiff, to quit in humiliating fashion. It wasn't enough to fire me, they needed to humiliate me and make an example out of me on my way out.

During the last week of July 2019, after 2 months of workplace harassment, sexual assaults and other egregious actions by EREWHON employees, management, executives, co-conspirators and patrons, I, the plaintiff, left the company.

C. **THE 6 MONTHS AFTER EREWHON**

40. Following my employment at EREWHON, I, the plaintiff, had full intention to file a lawsuit against the company for its egregious and intentional actions against me and spent the following 6 months seeking legal counsel and representation.

41. In Early August 2019, Days after leaving EREHWON, Co-Defendant Tabitha Lucius would tell me, the plaintiff, to not sue. This was said in an intimidating manner, while I was online seeking legal representation. Despite her intimidation attempts I continued to seek legal assistance.

D. **CO-CONSPIRATORS FROM EREWHON, EREWHON OWNER TONY ANTOCI, DOES 1-100, AND OTHERS SUBJECT PLAINTIFF TO TORTURE / HUMILIATION RITUAL AT NOBU – MALIBU ON JANUARY 26TH, 2020**

42. On January 26th, 2020, 6 months after leaving EREWHON, I, the plaintiff, would be invited to a dinner at Nobu-Malibu, (Defendant Nobu Hospitality LLC), by Co-Conspirator Kevin Anthony Carbo. I, the Plaintiff, had never been to Nobu before January 26th, 2020, and didn't know what to expect.

43. NOBU - Malibu is a restaurant located at 22706 Pacific Coast Highway, Malibu, CA 90265 and is co-owned by Defendant Robert De Niro and Defendant Nobuyuki Matsuhisa.

44. In a Dark area at Nobu Malibu that night were co-conspirators, (MICHAEL FLORIO, JOY TAYLOR, MICHAEL SMITH, CLAUDIA JORDAN, JOHN SALLEY), as well as EREHWON Owner TONY ANTOCI.

45. MICHAEL FLORIO would end up holding me against my will and CLAUDIA JORDAN would join him in physically restraining me from leaving the restaurant as the group that was sitting in the pitch-dark area would announce themselves throughout and aggressively question and coerce me to speak about my personal/private life.

46. This was a deliberate attack, an attack which would include psychological torture, defamation, sexual harassment, threats of blackmail plus a myriad of more crimes and would go on for hours.

47. As they held me by my arms, this cult claimed that there was a medium or clairvoyant type figure amongst them and what they were doing allowed them to freely go into other time frames of my life. Throughout the night they would claim to see and hear things about my life as well as make admissions about themselves. Some of the things that happened that night as they held me against my will include:

   a) Co-Conspirators Michael Smith and Joy Taylor both saying that I will kill myself.

   b) Co- Conspirator Claudia Jordan tried to take my phone away from me.

   c) Strange admissions by the cult regarding having sex with underaged teens and incest.

   d) Numerous defamatory allegations about me and my life what they were "seeing" through their ritual.

e) The cult mentioning people in my personal life including CO-DEFENDANT TABITHA LUCIUS

f) Someone in the group yelling out "Haitian" in a mocking manner; Later the entire group would do the same.

48. There were over 100 people in the area that night who participated in and witnessed the Torture ritual including (the Co-conspirators from EREWHON mentioned in paragraph 37), NOBU Owners/Employees, and Public Figures/Celebrities.

49. Some of those names include:

a) Robert De Niro

b) Joy Taylor

c) Jason Taylor (+ Daughter, and 2 Sons)

d) Michael Florio

e) Michael Smith

f) John Salley

g) Karlos Dansby

h) Brandon Marshall

i) Channing Crowder

j) Fred Taylor

k) Reggie Bush

l) Lilit Bush

COMPLAINT- 15

m) Reese Witherspoon

n) D.L. Hughley

o) Faison Love

p) Victor "N.O.R.E." Santiago

q) Nobuyuki "Nobu" Matsuhisa

r) Claudia Jordan

s) Mark Sanchez

t) Jay Glazer

u) Barry Sanders

v) Jared Odrick

50. This ordeal caused (the plaintiff) great psychological harm that night and has had a lasting effect.

### E.  PUBLIC AMBUSHES JANUARY 28TH, 2020 – MID MARCH 2020

51. The 6-week period between the night at NOBU- MALIBU and the National COVID-19 shutdown was full of ambushes, harassment and intimidation tactics, in different areas of Los Angeles, that happened in broad daylight. Most happened at train stations. One happened while on the side of the road waiting for an Uber.

52. During each of these ambushes I would recognize some of the same people from NOBU – Malibu including NOBU employees. They would make it clear they knew what happened at

Nobu on 01/26/20 and repeated and did the same things that were said and done by the cult that night.

### F.   CO-CONSPIRATORS RECRUITED OTHER PEOPLE IN PLAINTIFFS' PERSONAL LIFE TO CONTINUE ABUSE.

#### A.   Paul Evans & Melinda invite me over to their apartment to continue abuse.

53. Co – Conspirator Paul Evans, is a former acquaintance of the plaintiff,

54. Paul Evans lived with his partner Melinda in an Apartment complex in Hollywood, CA.

55. Over Multiple dates in Late January 2020 - Early February 2020 Paul Evans texted me over to his home like he had frequently done over the course of years. Melinda was there each time except for the last visit.

56. During each of those visits Paul spoke to me directly about what happened that night, repeated some of the exact things that were said to me and even engaged in the same confusion tactics, saying things that had nothing to do with what we were talking about in that moment.

57. When I asked how he knew about what happened at Nobu, down to the details, Melinda would admit to being there that night on 01/26/2020.

58. Melinda during the first visit told me she was the one that called me a Haitian at NOBU, as well as claiming that I was not an American and therefore did not have constitutional rights

COMPLAINT- 17

implying they're allowed to treat me as such.  (This was said as NOBU owners and Co-Defendants Robert De Niro and Nobuyuki Matsuhisa stood in front of me. They both shrugged and De Niro told me that's "How it is" in there and "It's not going to change" in response to me calling out the brazen and vile racism that was hurled at me as I was being held against my will).

59. After the first visit to Paul's place on 01/28/2020,  I was ambushed for the first time in a courtyard outside of a train station.

60. During a different visit, they essentially pushed me out and tried to torment me in a similar way that was done to me that night at Nobu with them (mostly Paul) telling me to leave and then keeping me from leaving.

61. When I finally left some chubby dirty blond, white woman ran down the stairs of the building called me Haitian and left out the opposite door of the lobby. By the time I turned around Paul and Melinda had closed the door.  I felt humiliated and embarrassed and made my way home, but not before being ambushed again at a train station.

62. I, the plaintiff, interpreted that as the chubby woman's admission that she was either there or that she was the one who actually said that to me that night at NOBU.

**B.  Co-Defendant Tabitha Lucius uses Covid-19 Pandemic to continue abuse.**

63. In Mid-March 2020, just days after the NBA Covid shutdown which would lead to the country shutting down, Tabitha Lucius, my older sister and a Nurse, contacts me and implores me to come stay with her as things were uncertain at the time even offering to pick me up. Given that uncertainty of an unprecedented global pandemic I would take her up on her offer, and she would pick me up.

64. When picking me up, Tabitha was more talkative than usual. We aren't close nor friendly, but we are the only family members that we have on this side of the country. So, I found her being talkative as strange as that isn't generally the nature of our relationship.

65. During the ride to her apartment, Tabitha spoke in a way that suggested that she knew about what happened to me at NOBU, but in an indirect manner.

66.  Tabitha would mention Co-conspirators Joy and Jason Taylor and go on to mention other things that happened at NOBU on that night of 01/26/2020 including:

   a)  That our father, who was alive at the time, was going to die.

COMPLAINT- 19

b) Co-Conspirator Mike Florio holding me against my will.

67. I had never told her about what happened at NOBU or the subsequent ambushes, so I was confused how she knew about it and the details from that night.

68. Once she got me to start thinking about that night and all the torment I went through, I felt a rush of extreme mental anguish and frustration. I said I wished I punched Mike Florio (in self-defense), and she laughed as she assured me that I did but I just didn't remember.

69. However, most of what she was saying was indirect, whenever I would ask her direct questions about what happened she would never answer me, just look at me or shake her head.

70. For the 4 weeks I spent at her apartment, she would repeatedly do the same tactics the cult did that night at NOBU, things like:

a) She would look past me, as if she was speaking to someone else behind me but it was just us two in the apartment. (This is something that Robert De Niro did constantly that night at NOBU.)

b) A lot of the things she would say didn't make any sense and weren't relevant in the moment. Just like the cult members and the co-conspirators during the ambushes.

COMPLAINT- 20

71. Someone obviously gave her the materials from that night and recruited her to do this to me.

72. What CO DEFENDANT TABITHA LUCIUS' agenda was I couldn't tell at the time, but I was cautiously optimistic that one more person outside of that of that dark restaurant knew what happened to me and could corroborate my story. With that being said, she constantly refused to tell me how she knew, who told her and replied to my mentions of police by shaking her head, as if she wouldn't speak to law enforcement about what she knew throughout my time at her place.

73. I was only at CO DEFENDANT TABITHA LUCIUS' residence for 4 weeks as between our personal issues and the obvious deliberate attempts to join in and continue the torture the cult had begun at NOBU made me extremely uncomfortable immediately after arriving until left.

74. Someone clearly gave her some materials from that night and directions on how and when to use the torture tactics and she chose to do so.

### C. Roodjery "Bonez" Roger uses Facetime calls from Florida to continue abuse.

75. Roodjery "Bonez" Roger was a good friend of the plaintiff, before becoming incarcerated around 2012. He had just been released from prison around November 2019 and was still residing in Florida. I generally looked forward to communicating with him as much as I could to make up for lost time.

76. Unfortunately, my eagerness to talk to an old friend would be turned against me and used to perpetuate the harm caused by the cult at NOBU-Malibu.

COMPLAINT- 21

77. Throughout time period of July 2020 - Spring 2021 I, the Plaintiff, was face-timed by Roodjery Roger numerous times, and to my surprise he would also reference things that suggested he knew what happened that night at Nobu as well as the different ambushes.

78. During the calls he would also do the same things the people at Nobu said and did that night, using some of the same rhetoric and undertones, urging me to listen and even speaking past me at times.

79. During these calls, he had people in the room with him off camera that he seemed to be getting his information and or direction from.

80. During one call, one of the first, he specifically questioned me about Claudia Jordan and Joy Taylor. At that point , I forgot that I even met these people, but as he kept talking it started to jog my memory, "but how do you know about that?" I would ask him.  He refused to tell me during that call but told me that Jason and Joy like me but that I don't like them as if they knew that I would not remember. My sister Tabitha had told me the same thing in the car just months earlier.

81. During another call, he turned a device around and he showed me a low-quality video game clip of NBA 2k Blacktop and said that it was me playing it. I didn't even have a game console at the time of the facetime, but he ensured me it was a clip from what happened to me that night at NOBU.

COMPLAINT- 22

82. There was a call where he and what seemingly was a group of people off camera was laughing at something and he would disclose that they were watching a video of me at Nobu that night. I would ask to see the video, but he played the audio instead.

83. I recognized the audio he played, and it was from that night at NOBU. As I heard the dialogue, I remembered what I said and finished my own sentence from the recording. At that point he would rush off the phone.

84. Despite my request, he refused to send me the materials he had.

85. At a later point in 2020 he would reluctantly call me and say that he learned that he went to jail in a future time frame through the contents of the Ritual that was done to me at Nobu on January 26th, 2020.

### D. Co-Defendant Tabitha Lucius uses Father's death to continue abuse.

86. On or around February, 11th, 2021, my father passed away while my mother was in Los Angeles visiting CO- DEFENDANT TABITHA LUCIUS.

87. I received a frantic call from an out of state Family member who claimed that when she was breaking the news to my mother, the phone went silent and that she thought my mother may have suffered shock and implored me to go check on her since Tabitha was at work and they couldn't get in contact with her.

88. Although I was not on speaking terms with Tabitha at the time and hadn't seen or spoken to her since March 2020, I decided to put that to the side and go to her place to check on our mother. When I got there Tabitha was there and our mother seemed fine.

89. I ended up deciding to spend a couple minutes with them to make sure everyone was alright given the bad news. Tabitha, however, saw this as an opportunity to pick up where she left off regarding the psychological torment tactics that she performed the last time I saw her (March 2020 - April 2020) this time she had our mother join in, the same person I came to check on. I ignored it, I was essentially there to make sure my mother didn't die from shock of hearing about my father's death. Our mother was fine, Tabitha was there, and I would soon leave.

### E.  <u>More people from Plaintiffs personal life get involved.</u>

90. In late April 2021, an old friend from Florida would visit me.  He immediately gave me a hug as soon as he saw me, although I have considered him a friend in the past that is not our usual greeting.

91. Ashton would act strangely at times as if he were nervous about something and then at one point, start acting uncharacteristically disrespectful.

92. As he kept going and going, I realized that he was mimicking the ex- NFL players from that night at NOBU and repeating their behavior. At that point, the events of that night were still a blur for me, but that was a clear sign that he knew about what happened to me at NOBU but chose to be indirect about it. At that point I'd been through this before with Paul Evans, Roodjery Roger, CO-DEFENDANT TABITHA LUCIUS and throughout the numerous ambushes.

## F.  Harassment In Las Vegas, NV

### Mid-February 2022

93. I would visit Las Vegas for the first time in February of 2022 and run into a couple instances of harassment from what I believe was members of the cult.

94. One night I got on an elevator to go down to the lobby of the Casino. Once the elevator doors opened a white man about 5'4 aggressively stares me down. I glanced back for a few seconds, then ignored him decided to keep walking. The man was accompanied by an Asian woman about the same height.

95. After walking for a bit, I would peek back, just to see him still aggressively staring. No words were spoken as I would continue to walk away.

96. I would also meet up with someone and as I spoke with them people would routinely harass me, even mouthing things to them. Prompting the person, I was with to ask me "Who are you?".

### Mid-March 2022

97. On another trip to Vegas, I am approached by a strange woman, who ends up following me around the casino.  I'm able to get rid of her for a bit until I go to cash out my voucher, when

COMPLAINT- 25

she returns, and I let her know that I'm not interested. As this is happening a man comes around the corner where I was standing and says, "You know you want that!". He then gets in my face and makes references to my situation.

**Mid-April 2022**

98. My third trip to Vegas I recognized a woman in the front row of a Southwest flight back to LA. She was at Nobu that night. There were also other people in the plane talking about my clothes. I also heard people collectively groan when I spoke to the passenger next to me. I am not a public figure, but that cult is full of them, and they did what they did to me in a very public way. This was once again another sign that they had shared what they did to me and more conformation that trips are not be safe for me.

**May 7th, 2022 – Present Day and Impact on Plaintiff's life**

99. Based on the details and nature of what the Defendants and Co - Conspirators did, the impact on my life is permanent and affects me in all aspects of life, as I don't know if I or my family (future wife and kids; I want to start a family one day) will ever be able to have any privacy or security again. The cult themselves repeatedly

told me they wouldn't stop doing what were doing to compromise my security and privacy nor would they in the future.

### FIRST CAUSE OF ACTION

**RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS § 1962 (C) (D)**

***Against All Defendants***

100. Plaintiff repeats and realleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

101. Plaintiff has been harmed by the racketeering activities of the Defendant(s) and therefore, the plaintiff is entitled to bring a civil action under The Racketeer Influenced and Corrupt Organizations Act (RICO).

102. The Defendants' acts and omissions, taken separately and/or together, as outlined above, constitute a violation of The Racketeer Influenced and Corrupt Organizations Act (RICO). Specifically, Defendant (s) EREHWON and NOBU HOSPITALITY LLC and Owners on multiple occasions committed False Imprisonment, Sexual Assault, Sexual Harassment Coercion, Blackmail, Witness Tampering, Intimidation, Stalking, Conspiracy and the Attempted Murder of, The Plaintiff, in multiple jurisdictions and all Defendants and co-conspirators participated and facilitated in inflicting harm to the plaintiff. At all relevant times, Defendants participated in and the harboring and transportation of Plaintiff for purposes of perpetuating the predicate acts listed above.

103. Defendant EREWHON, Defendant NOBU HOSPITALITY LLC, along with OWNERS, Defendant TONY ANTOCI, Defendant ROBERT DE NIRO, Defendant NOBUYUKI MATSUHISA, Does 1-100 and Defendant Tabitha Lucius, conspired to and engaged in a pattern of racketeering activity as defined by 18 U.S.C § 1962.

104. As a direct and proximate result of Defendants' unlawful conduct as alleged hereinabove, Plaintiff has suffered severe emotional distress and anxiety, humiliation, embarrassment, Indignity, post-traumatic stress disorder, economic harm and other consequential damages.

105. Plaintiff also seeks reasonable attorneys' fees.

**SECOND CAUSE OF ACTION**
**Violation of California Fair Employment and Housing Act**
**(Gov. Code, § 12900 et seq.)**
*Against all Defendants*

106. Plaintiff repeats and realleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

107. Plaintiff is a victim of Harassment and Discrimination within the meaning of the California Fair Employment and Housing act, Gov. Code, § 12900 et seq. and is therefore entitled to bring a civil action under the California Fair Employment and Housing Act, Gov. Code, § 12900 et seq.

108. The Defendants' acts and omissions, taken separately and/or together, as outlined above, constitute a violation of The California Fair Employment and Housing Act. Specifically, Defendants EREWHON and the defendants conspired to and created a hostile work

COMPLAINT- 28

environment where the plaintiff was harassed, assaulted, and discriminated against because of complainant's ancestry, sex/gender, race (includes hairstyle and hair texture) and as a result of the discrimination was forced to quit, asked impermissible non-job-related questions.

109. I, the Plaintiff, experienced retaliation because I resisted the discrimination and harassment and as a result was forced to quit and asked impermissible non-job- related questions.

110. The conduct of EREHWON, et al was intentional, brazen, and egregious. As an Employer, EREHWON not only failed to protect the plaintiff as an employee, but instead intentionally set out to inflict harm.  By intentionally orchestrating open Sexual Harassment, Sexual Assaults, and Ambushes, EREHWON acted with conscious disregard of Plaintiff's rights and feelings, and with intention to cause humiliation, to cause fear, Mental/ psychological injury, and/or pain and suffering to Plaintiff and use him as an example in what was and is a figurative lynching.

111. As a result of The Defendants' conduct, I the Plaintiff has, severe emotional distress, humiliation, embarrassment, indignity, anxiety, economic harm, and other consequential damages.

**THIRD CAUSE OF ACTION**

**Conspiracy, Sexual assault/Sexual Battery, Cal. Civ. Code § 1708.5**

*Against All Defendants*

112. Plaintiff repeats and realleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

113. Plaintiff is a victim of Sexual Battery within the meaning of Cal. Civil Code 1708.5 (a)(1-3) and is therefore entitled to bring a civil action under 1708.5 (b)

114. The Defendants' acts and omissions, taken separately and/or together, as outlined above, constitute a violation of Cal. Civil Code 1708.5.

115. Specifically, Defendant EREWHON, supervisors, managers, and store directors coordinated with EREWHON subordinate employees and Customers/Patrons (Does 1-100), to commit multiple public sexual assaults against the plaintiff for purposes of humiliation and indignity.

116. Defendant(s) NOBU HOSPITALITY LLC, Owners Robert De Niro, Nobuyuki Matsuhisa, harbored and coordinated a torture and humiliation ritual on 01/26/2020 where co-conspirators Michael Florio and Claudia Jordan held the Plaintiff against his will in a dark area of the restaurant. A group of people, including celebrities, professional athletes, public figures, executives and business owners, were sitting in the dark area. Michael Florio at one point during the False imprisonment puts his hand in front of the plaintiff's crotch to mock and humiliate the Plaintiff, causing the plaintiff to have "imminent apprehension" that Michael Florio's action may result in offensive contact 1708.5(a)(3)

117. As a direct and proximate result of Defendants' unlawful conduct as alleged hereinabove, Plaintiff has suffered, oppression, severe emotional distress and anxiety, humiliation,

embarrassment, indignity, post-traumatic stress disorder, economic harm and other

consequential damages.

118. Plaintiff also seeks exemplary damages.

### FOURTH CAUSE OF ACTION

**18 U.S.C. § 1113 - Attempt to commit murder or manslaughter.**

***Against All Defendants***

119.  Plaintiff repeats and realleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

120.  Plaintiff is a victim of Attempted Murder within the meaning of 18 U.S.C. § 1113 and is therefore entitled to bring a civil action.

121.  The Defendants' acts and omissions, taken separately and/or together, as outlined above, constitute a violation of 18 U.S.C. § 1113.

122. Specifically, Co-Conspirators Michael Smith and Joy Taylor repeatedly and aggressively attempt to convince the plaintiff that he will kill himself as the group held the plaintiff against his will and subjected him to a torture ritual at NOBU on January 26th, 2020 as mentioned above on paragraph 47 (a).

123. Defendant(s) NOBU HOSPITALITY LLC, Owners Robert De Niro, Nobuyuki Matsuhisa, harbored and coordinated a torture and humiliation ritual on 01/26/2020 where co-conspirators Michael Florio and Claudia Jordan held the Plaintiff against his will in a dark area of the restaurant. A group of people, including celebrities, professional athletes, public figures, executives and business owners, were sitting in the dark area and engaged in torture against the plaintiff throughout the night. Among this group was TONY ANTOCI, CEO and OWNER of EREWHON, the Plaintiffs former employer, where these abuses began. TONY ANTOCI AND EREHWHON are both DEFENDANTS in this case.  All Defendants and Co-Conspirators conspired and coordinated their actions in order to inflict harm onto the plaintiff.

124. As a direct and proximate result of Defendants' unlawful conduct as alleged hereinabove, Plaintiff has suffered, oppression, severe emotional distress and anxiety, humiliation, embarrassment, indignity, post-traumatic stress disorder, economic harm and other consequential damages.

125. Plaintiff also seeks exemplary damages.

**FIFTH CAUSE OF ACTION**

**18 U.S.C. § 2261A - Stalking**

***Against All Defendants***

126. Plaintiff repeats and realleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

127. Plaintiff is a victim of Stalking within the meaning of 18 U.S.C. § 2261A - Stalking (B) and is therefore entitled to bring a civil action.

128. The Defendants' acts and omissions, taken separately and/or together, as outlined above, constitute a violation of 18 U.S.C. § 2261A - Stalking (B).

129. As mentioned above, While the Plaintiff was an employee there during May 2019 – July 2019 the Defendant EREWHON, created a hostile environment where they encouraged employees, customers and patrons to stalk the Plaintiff, at and outside of work subjecting him to harassment, threats and physical assaults. EREWHON went as far even sharing the plaintiffs work schedule with the stalkers, not only violating the plaintiff's privacy but also intentionally putting his safety at risk. The unknown patrons and customers are listed as Defendants DOES 1-500.  After the Plaintiff's employment ended, the stalking has persisted and is an ongoing issue and has resulted in numerous instances of assault, ambushes and false imprisonment of the plaintiff over the past 6 years including the events of Janurary 26th, 2020 at Nobu - Malibu.

130. As a direct and proximate result of Defendants' unlawful conduct as alleged hereinabove, Plaintiff has suffered, oppression, severe emotional distress and anxiety, humiliation, embarrassment, indignity, post-traumatic stress disorder, economic harm and other consequential damages.

131. Plaintiff also seeks exemplary damages

## SIXTH CAUSE OF ACTION

### Conspiracy/Felony False imprisonment, Cal. Pen. Code § 236

*Against All Defendants*

132. Plaintiff repeats and realleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

133. Plaintiff is a victim of False imprisonment within the meaning of Cal. Pen. Code § 236 and is therefore entitled to bring a civil action.

134. The Defendants' acts and omissions, taken separately and/or together, as outlined above, constitute a violation of Cal. Pen. Code § 236.

135. Specifically, Defendant EREWHON, supervisors, managers, and store directors coordinated and conspired with EREWHON subordinate employees and Customers/Patrons (Does 1-100), to commit multiple acts of False Imprisonment against the Plaintiff while he was an employee at EREWHON. After the Plaintiff's Employment at EREWHON, The Defendants and Co-conspirators conspired to repeatedly stalk, harrass, assault and commit False imprisonment against the plaintiff including the events at Nobu-Malibu on the night of

Janurary 26th 2020 when the plaintiff was held against his will for hours and subjected to psychological torture as mentioned above.

136. As a direct and proximate result of Defendants' unlawful conduct as alleged hereinabove, Plaintiff has suffered, oppression, severe emotional distress and anxiety, humiliation, embarrassment, indignity, post-traumatic stress disorder, economic harm and other consequential damages.

137. Plaintiff also seeks exemplary damages

## SEVENTH CAUSE OF ACTION

**Violation of the California Tom Bane Civil Rights Act, Cal. Civil Code § 52.1**

*Against All Defendants*

138.  Plaintiff repeats and realleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

139. Plaintiff is a victim of Intimidation, Coercion, Stalking, Sexual assault, Battery, False Imprisonment and is therefore entitled to bring civil action under the California Tom Bane Civil Rights Act, Cal. Civil Code § 52.1 (b).

COMPLAINT- 35

140. The Defendants' acts and omissions, taken separately and/or together, as outlined above, constitute a violation of the California Tom Bane Civil Rights Act, Cal. Civil Code § 52.1. Specifically, The Defendant(s) have engaged in repeated ambushes of The Plaintiff and at all relevant times, Defendants participated in and facilitated the harboring and transportation of Plaintiff for purposes of coercion, fraud, Intimidation and intentional infliction of emotional distress.

141.  As a direct and proximate result of Defendants' unlawful conduct as alleged hereinabove, Plaintiff has suffered severe emotional distress and anxiety, humiliation, indignity, embarrassment, post-traumatic stress disorder, economic harm and other consequential damages.

142. Plaintiff also seeks reasonable attorneys' fees.

## EIGTH CAUSE OF ACTION

### Negligence, Cal. Civil Code § 1714

### *Against Defendant(s) EREWHON, NOBU HOSPITALITY LLC*

143. Plaintiff repeats and realleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

144. Plaintiff is a victim of Negligence and is therefore entitled to bring civil action under Cal. Civil Code § 1714.

145. The Defendants' acts and omissions, taken separately and/or together, as outlined above, constitute Negligence as defined in Cal. Civil Code § 1714.

146. Specifically, As an Employer and Former Employer EREHWON's actions constitute gross negligence. As a Business Nobu Hospitality actions and lack thereof constitute negligence.

147. As a direct and proximate result of Defendants' unlawful conduct as alleged hereinabove, Plaintiff has suffered severe emotional distress and anxiety, humiliation, indignity, embarrassment, post-traumatic stress disorder, economic harm and other consequential damages.

148. Plaintiff also seeks reasonable attorneys' fees.

## NINTH CAUSE OF ACTION

### Witness Intimidation, 18 U.S. Code § 1512

### *Against All Defendant(s)*

149. Plaintiff repeats and realleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

150. Plaintiff is a victim of Witness Intimidation, with intent to hinder, delay, or prevent legal proceedings and is therefore entitled to bring civil action under the

151. The Defendants' acts and omissions, taken separately and/or together, as outlined above, constitute a violation of the California Tom Bane Civil Rights Act, Cal. Civil Code § 52.1. Specifically, The Defendant(s) have engaged in repeated ambushes of The Plaintiff and at all relevant times, Defendants participated in and facilitated the harboring and transportation of Plaintiff for purposes of coercion, fraud, Intimidation and intentional infliction of emotional distress.

152. As a direct and proximate result of Defendants' unlawful conduct as alleged hereinabove, Plaintiff has suffered severe emotional distress and anxiety, humiliation, indignity, embarrassment, post-traumatic stress disorder, economic harm and other consequential damages.

153. Plaintiff also seeks reasonable attorneys' fees.

COMPLAINT- 38

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays judgment be entered in his favor against Defendants, and each of them, as follows:

1. For a money judgment representing compensatory damages including consequential damages, lost wages, earning, and all other sums of money, together with interest on these amounts, according to proof;

2. For a money judgment for mental pain and anguish, PTSD, and intentional infliction of emotional distress, according to proof;

3. For punitive and exemplary damages according to proof;

4. For attorneys' fees and costs;

5. For prejudgment and post-judgment interest; and

6. For such other and further relief as the Court may deem just and proper.

Dated: April 1st, 2025

Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

# UNITED STATES DISTRICT COURT
for the
Central District of California

Western Division

Nathanael Lucius ) Case No. _____
)
) *(to be filled in by the Clerk's Office)*
)
*Plaintiff(s)* )
*(Write the full name of each plaintiff who is filing this complaint.* ) Jury Trial: *(check one)* ☑ Yes ☐ No
*If the names of all the plaintiffs cannot fit in the space above,* )
*please write "see attached" in the space and attach an additional* )
*page with the full list of names.)* )
**-v-** )
)
see attached )
)
)
)
)
*Defendant(s)* )
*(Write the full name of each defendant who is being sued.  If the* )
*names of all the defendants cannot fit in the space above, please* )
*write "see attached" in the space and attach an additional page* )
*with the full list of names.)* )

## COMPLAINT FOR A CIVIL CASE

### I.   The Parties to This Complaint

**A.   The Plaintiff(s)**

Provide the information below for each plaintiff named in the complaint.  Attach additional pages if needed.

| | |
|---|---|
| Name | Nathanael Lucius |
| Street Address | 213 North Glendale Ave. #1091 |
| City and County | Glendale, Los Angeles County |
| State and Zip Code | California, 91206 |
| Telephone Number | 213-424-5225 |
| E-mail Address | LuciusNate@gmail.com |

**B.   The Defendant(s)**

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation.  For an individual defendant, include the person's job or title *(if known)*.  Attach additional pages if needed.

Page 1 of 5

Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

Defendant No. 1

| | |
|---|---|
| Name | Erewhon Market |
| Job or Title (if known) | Plaintiffs Former Employer |
| Street Address | 15285 Sunset Blvd |
| City and County | Pacific Palisades, Los Angeles County |
| State and Zip Code | California 90272 |
| Telephone Number | 310-561-8898 |
| E-mail Address (if known) | cares@enfmkt.com |

Defendant No. 2

| | |
|---|---|
| Name | Nobu Hospitality LLC |
| Job or Title (if known) | |
| Street Address | 22706 Pacific Coast Highway, |
| City and County | Malibu, Los Angeles County |
| State and Zip Code | California, 90265 |
| Telephone Number | 310-317-9140 |
| E-mail Address (if known) | Malibu@noburestaurants.com |

Defendant No. 3

| | |
|---|---|
| Name | Tony Antoci |
| Job or Title (if known) | Owner of Erewhon Market |
| Street Address | 15285 Sunset Blvd |
| City and County | Pacific Palisades, Los Angeles County |
| State and Zip Code | California, 90272 |
| Telephone Number | 310-561-8898 |
| E-mail Address (if known) | cares@enfmkt.com |

Defendant No. 4

| | |
|---|---|
| Name | Robert De Niro |
| Job or Title (if known) | Part Owner of NOBU Hospitality LLC |
| Street Address | 22706 Pacific Coast Highway, |
| City and County | Malibu, Los Angeles County |
| State and Zip Code | California, 90265 |
| Telephone Number | 310-317-9140 |
| E-mail Address (if known) | Malibu@noburestaurants.com |

## II.    Basis for Jurisdiction

Federal courts are courts of limited jurisdiction (limited power).  Generally, only two types of cases can be heard in federal court: cases involving a federal question and cases involving diversity of citizenship of the parties.  Under 28 U.S.C. § 1331, a case arising under the United States Constitution or federal laws or treaties is a federal question case.  Under 28 U.S.C. § 1332, a case in which a citizen of one State sues a citizen of another State or nation and the amount at stake is more than $75,000 is a diversity of citizenship case.  In a diversity of citizenship case, no defendant may be a citizen of the same State as any plaintiff.

What is the basis for federal court jurisdiction?  *(check all that apply)*

☑ Federal question              ☐ Diversity of citizenship

Fill out the paragraphs in this section that apply to this case.

### A.    If the Basis for Jurisdiction Is a Federal Question

List the specific federal statutes, federal treaties, and/or provisions of the United States Constitution that are at issue in this case.

18 U.S.C. Chapter 96 - Racketeer Influenced and Corrupt Organizations § 1962 (c)
18 U.S.C. § 1113 - Attempt to commit murder or manslaughter
18 U.S.C. § 2261A - Stalking (B)
18 U.S. CODE § 1512- WITNESS INTIMIDATION

### B.    If the Basis for Jurisdiction Is Diversity of Citizenship

1.    The Plaintiff(s)

a.    If the plaintiff is an individual

The plaintiff,  *(name)* _____ , is a citizen of the State of *(name)* _____ .

b.    If the plaintiff is a corporation

The plaintiff,  *(name)* _____ , is incorporated under the laws of the State of *(name)* _____ , and has its principal place of business in the State of *(name)*

_____ .

*(If more than one plaintiff is named in the complaint, attach an additional page providing the same information for each additional plaintiff.)*

2.    The Defendant(s)

a.    If the defendant is an individual

The defendant,  *(name)* _____ , is a citizen of the State of *(name)* _____ . Or is a citizen of *(foreign nation)* _____ .

Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

b.    If the defendant is a corporation

The defendant, *(name)* _____, is incorporated under

the laws of the State of *(name)* _____, and has its

principal place of business in the State of *(name)* _____.

Or is incorporated under the laws of *(foreign nation)* _____,

and has its principal place of business in *(name)* _____.

*(If more than one defendant is named in the complaint, attach an additional page providing the same information for each additional defendant.)*

3.    The Amount in Controversy

The amount in controversy–the amount the plaintiff claims the defendant owes or the amount at stake–is more than $75,000, not counting interest and costs of court, because *(explain)*:

900,000,000

## III.    Statement of Claim

Write a short and plain statement of the claim.  Do not make legal arguments.  State as briefly as possible the facts showing that each plaintiff is entitled to the damages or other relief sought.  State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct.  If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph.  Attach additional pages if needed.

Erewhon Market, NOBU Hospitality LLC and  their owners, have retaliated against and targeted the Plaintiff, subjecting him to repeated instances of Stalking, Surveillance, Witness intimidation, False Imprisonment, Sexual Assaults and Defamation  . The Defendants  actions began while the Plaintiff  was employed at Erewhon during the summer of 2019 (May - July); continuing into his personal life after leaving Erewhon including an on January 26th 2020 during a dinner invitation at Nobu-Malibu where I was held against my will in a dark area and tortured for hours. Following the events of  January 26th, I have been stalked in multiple states, ambushed , and harassed by individuals  who have aggressively engaged in participating in the continuation of the torture ritual. This also

## IV.    Relief

State briefly and precisely what damages or other relief the plaintiff asks the court to order.  Do not make legal arguments.  Include any basis for claiming that the wrongs alleged are continuing at the present time.  Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts.  Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages.

1. $300,000,000 for a money judgment representing compensatory damages including consequential damages, lost wages, earning, and all other sums of money, together with interest on these amounts, according to proof;

2. $300,000,000 for a money judgment for mental pain and anguish, PTSD, and intentional infliction of emotional distress, according to proof;

3. $300,000,000 for punitive and exemplary damages according to proof;

Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

## V.      Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A.      For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served.  I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing:              04/01/2025

Signature of Plaintiff        *N Lucius*

Printed Name of Plaintiff        Nathananel Lucius

### B.      For Attorneys

Date of signing:

Signature of Attorney

Printed Name of Attorney

Bar Number

Name of Law Firm

Street Address

State and Zip Code

Telephone Number

E-mail Address